IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NORVIS HARMON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-2083-L** |
| | § | |
| **DALLAS COUNTY, TEXAS and** | § | |
| **DERICK EVANS,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Derick Evans's Motion for Summary Judgment (Doc. 57), filed April 26, 2017. After considering the motion, briefs, pleadings, and evidence, the court **grants** Defendant Derick Evans's Motion for Summary Judgment (Doc. 57) and **dismisses with prejudice** Plaintiff's claim against Derick Evans ("Evans") in his individual capacity based on Plaintiff Norvis Harmon's ("Plaintiff" or "Harmon") alleged right to petition or appeal the termination of his employment, whether premised on retaliation in violation of the First Amendment's Petition Clause, denial of equal protection, or violations of state and local law ("Petition Claim").

Because the court's ruling rests in part on its determination as to which claims by Plaintiff are before the court and remain after the court's March 31, 2017 memorandum opinion and order, the court addresses in detail the allegations in Plaintiff's pleadings regarding Plaintiff's Petition Claim and how this claim, which was originally pleaded as a constitutional claim involving the denial of equal protection, *morphed and expanded* over the course of this litigation into a constitutional claim for alleged violations of the First Amendment right to petition, and, most

recently, into a claim encompassing alleged violations of Plaintiff's statutory grievance rights under Texas Government Code § 617.005 and Dallas County Code Chapter 86. For the reasons herein explained, the court determines that Plaintiff's Petition Claim, brought pursuant to 42 U.S.C. § 1983, is either not properly before the court because it was not included in Plaintiff's pleadings, was abandoned by Plaintiff, or fails as a matter of law, regardless of whether it is characterized as a claim based on the denial of equal protection, retaliation in violation of the First Amendment's Petition Clause, or violations of statutory grievance rights under Texas Government Code § 617.005 and Dallas County Code Chapter 86.

## I.    Factual and Procedural Background

Harmon brought this action against Defendants Dallas County, Texas ("Dallas County" or "the County") and former Dallas County Constable Evans (collectively, "Defendants") on June 3, 2013. Harmon was previously employed by Dallas County in Constable Office, Precinct 1, as a deputy constable. His employment was terminated on June 3, 2011. The termination of his employment is the subject of this lawsuit, as well as a prior state court action filed by Harmon and two other deputy constables against Dallas County on September 9, 2011, in the 44th Judicial District Court, Dallas County, Texas.

In the state court action, Harmon and the other plaintiffs asserted claims for alleged violations of the Texas Whistleblower Act ("TWA") and Texas Local Government Code § 617.004, and an equal protection claim for alleged violations of the Texas Constitution. On March 28, 2012, the Whistleblower claim, equal protection claim, and claim for alleged violations of Texas Government Code 617.005 brought by Harmon in the state court action were dismissed with prejudice. In this federal action, Harmon originally asserted two claims against Defendants, pursuant to 42 U.S.C. §

1983, for alleged constitutional violations based on the denial of equal protection to petition the government and retaliation in violation of his First Amendment right to free speech. In his Complaint, Harmon refers to these claims as his "Denial of Equal Protection" claim and "Free Speech Claim." Pl.'s Compl. 4, 5.

### A. First Amendment "Free Speech Claim" Included in Plaintiff's Complaint

In his Complaint, Plaintiff refers to his claim against Defendants under the First Amendment for alleged retaliation as his "Free Speech Claim." *Id.* at 5. Regarding his Free Speech Claim, Harmon alleges in his Complaint that Defendants retaliated against him in terminating his employment in violation of his First Amendment right to speak out on matters of public concern. Specifically, Harmon contends that he was fired because he reported that Evans and the supervisors under Evans engaged in illegal conduct in requiring deputy constables, including him, to: (1) donate time and money to Evans's re-election campaign; (2) work unpaid for political allies and friends of Evans; and (3) tow citizens' vehicles after traffic stops. In addition, Plaintiff asserts that he reported Evans's illegal conduct in setting traffic citation quotas in violation of Texas Transportation Code § 720.002.

### B. Denial of Equal Protection Claim Based on Right to Petition Included in Plaintiff's Complaint

In his Complaint, Plaintiff refers to his claim against Defendants for alleged violations of his "right to petition the government for redress of grievances" as his "Denial of Equal Protection" claim. *Id.* at 4. Regarding this claim, Harmon alleges in his Complaint that he sought to appeal the termination of his employment "through the Dallas County grievance system and by appealing to Defendant Evans[,]his department head, but his requests to appeal were refused by Defendants." *Id.*

¶ 23.  Harmon alleges that Defendants refused to hear the appeal of his termination through the Dallas County grievance system because he was not employed as a Deputy Constable before August 19, 2003.  Defendants do not dispute that Dallas County's formal grievance system applies only to deputy constables hired before August 19, 2003, and Harmon's appeal through Dallas County's formal grievance system was rejected because he was hired after August 19, 2003.  Harmon contends that the right to petition the government is a fundamental right, and "the actions of Defendants [in] depriv[ing] [him] of the right to petition the government for redress of grievances, when such right is granted to other similarly situated employees [deputy constables hired before August 19, 2003], is a denial of [his] right to equal protection of law guaranteed by the U.S. Constitution."  *Id*. ¶ 26.

## C.    Plaintiff's Rule 7(a) Reply

On August 7, 2013, Dallas County filed its Answer to Plaintiff's Complaint, asserting, among other things, that Plaintiff's claims against it were barred by res judicata as a result of the state court action.  On March 15, 2014, Evans filed his Answer, similarly alleging that Plaintiff's claims against him were barred by res judicata, even though he was not a party to the state court action.  Evans's Answer also included the defense of qualified immunity.  Evans alleges that Plaintiff's claims against him are barred by qualified immunity because he did not engage in any conduct that could be "characterized as objectively unreasonable and which all officials in his circumstances would condemn as violative of Constitutional rights."  Evans's Answer ¶ 5.  On February 26, 2015, former United States Chief Judge Jorge A. Solis ("Judge Solis") ordered Plaintiff to file a reply under Federal Rule of Civil Procedure 7(a) ("Rule 7(a) Reply") regarding "Defendants' qualified immunity defense[]" by March 18, 2015, and set a deadline for dispositive motions on qualified immunity for

April 17, 2015. Order 1 (Doc. 24). On March 18, 2015, Plaintiff filed his Rule 7(a) Reply (Doc.

25) as directed. In his Rule 7(a) Reply, Plaintiff alleges in pertinent part as follows:

1. . . . Defendant Evans was a Texas peace officer and an elected Constable for Dallas County, Texas when he terminated Harmon for speaking out on matters of public concern. In 2013, the law was clearly established that public employees could not be terminated from their employment for speaking out on matters of public concern. As such, Defendant Evans is not entitled to prevail on his defense of qualified immunity.

30. Harmon alleges Defendant Evans had knowledge that Harmon reported Evans' illegal conduct to investigators hired by the Dallas County Commissioners Court, for speaking to the special prosecutor and for speaking to other law enforcement personnel.

31. Norvis Harmon alleges his termination was a wrongful termination because Defendant Evans terminated Harmon in retaliation for Harmon's speaking to investigators hired by the Dallas County Commissioners Court, for speaking to the special prosecutor and for speaking to other law enforcement personnel about Evans' illegal conduct.

32. Harmon alleges Defendant Evans' illegal conduct, including his illegal lottery to support his re-election campaign that resulted in Evans' felony conviction, were matters of public concern.

33. In 2011, every reasonable elected Constable in the State of Texas would have understood that Defendant Evans' conduct was objectively unreasonable as the law was clearly established that public employees cannot be terminated for speaking out on matters of public concern; because the law was clearly established that corruption and illegal conduct by elected officials is a matter of public concern; and because such a termination would and did violate Norvis Harmon's Constitutional rights.

34. Defendant Evans claims that Norvis Harmon was terminated due to discrepancies related to a G.P.S. system in the vehicles Harmon used to perform duties serving civil process as a deputy constable, but this purported reason is merely a pretext for Evans' illegal termination of Harmon.

35. Other similarly situated employees were permitted to explain the circumstances of the G.P.S. discrepancies and they were not terminated.

36. Still other similarly situated employees [deputy constables hired before August 19, 2003] who were permitted to explain the circumstances of the G.P.S.

discrepancies in the context of a grievance process allowed by the Dallas County Civil Service system were reinstated to employment after their termination.

37.     After Norvis Harmon was fired, he appealed and filed a grievance over his wrongful termination.

38.     Defendant Evans illegally refused to hear Harmon's grievance over his termination, although Dallas County has claimed that all employees of Dallas County have the right to appeal terminations to their department head.

39.     Defendant Evans was Norvis Harmon's department head at the time of Harmon's wrongful termination.

40.     Defendant Evans had a policy and/or a regular practice to not hear grievances of employees, including grievances by deputy constables.

41.     As an elected Constable, Defendant Evans was a final policy-maker regarding the grievance policy and/or practice of his office.

42.     Defendant Dallas County also refused to allow Norvis Harmon to grieve his termination because Harmon was first employed as a deputy constable for Dallas County after August 19, 2003.

43.     Deputy constables hired before August 19, 2003, who were otherwise similarly situated to Norvis Harmon, were allowed to grieve their terminations.

44.     The sole criteria established by Defendant Dallas County to classify whether employees were allowed a grievance right was the employees date of hire.

45.     The right to petition the government for the redress of grievances is established by the First Amendment to the U.S. Constitution and it is a fundamental right.

46.     The classification by Defendant Dallas County of deputy constables into those who were allowed grievance rights and those who were denied any grievance rights is an illegal classification that amounts to a denial of equal protection.

47.     The classification by Defendant Dallas County was accomplished by action of the Dallas County Commissioners Court, which is the final policymaker for Dallas County regarding the granting of grievance rights under the Dallas County Civil Service system.

48.     Similarly situated employees [deputy constables hired before August 19, 2003] who were allowed to present their grievance to the Dallas Civil Service Commission were reinstated to their employment after their termination by Defendant Evans.

49.     Norvis Harmon has been damaged as a result of his wrongful termination; because of Defendant Evans' refusal to hear any appeal of Harmon's wrongful termination; and as a result of his denial of grievance rights in the Dallas County Civil Service system by Defendant Dallas County.

50.     Defendant Evans is not entitled to any immunity, neither in his official capacity, nor in his personal capacity for his illegal conduct of wrongfully terminating Norvis Harmon in retaliation for Harmon's exercise of his First Amendment right to speak out on a matter of public concern.

Pl.'s Rule 7(a) Reply ¶¶ 1, 30-50. Norman further alleges that "the law was clearly established that public employees could not be terminated from their employment for speaking out on matters of public concern; and it was also clearly established in 2013 that corruption and illegal acts by public officials and elected officials was a matter of public concern." *Id.* ¶ 3.

### D.     Evans's Motion for Judgment and Plaintiff's Request to Amend his Pleadings

On April 17, 2015, Evans moved, based on his defense of qualified immunity, for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) ("Motion for Judgment") on Plaintiff's First Amendment "Free Speech Claim" claim. In his response to Evans's Motion for Judgment (Doc. 27), Plaintiff sought leave to supplement his Complaint and Rule 7(a) Reply and attached as an exhibit to his response his proposed Supplement to Original Complaint and Rule 7(a) Reply, which supplements the allegations with respect to his Free Speech Claim. Evans's reply in support of his Motion for Judgment does not address Plaintiff's request to supplement his pleadings. On December 1, 2015, Judge Solis entered an order denying Evans's Motion for Judgment. Judge Solis's order does not expressly rule on or address Plaintiff's request for leave, but the order states

that the court's ruling is based on the facts in Harmon's Complaint and Rule 7(a) Reply. Order 1 n.1 (Doc. 29). The order contains several citations and references to the factual allegations in "Doc. 25," which is Plaintiff's Rule 7(a) Reply, as well as "Doc. 27." As noted, "Doc. 27" is actually Plaintiff's response to the Motion for Judgment, not the proposed supplement that is attached to Plaintiff's response, but it is apparent from Judge Solis's order that his citations to "Doc. 27" refer to Plaintiff's proposed supplement (Doc. 27-1). This is the only time Plaintiff requested to amend his pleadings.

### E. Partial Motions for Summary Judgment

The case was assigned to the undersigned on April 27, 2016, three days before Judge Solis retired. On July 17, 2016, although the deadline set by Judge Solis for filing dispositive motions had expired, the court granted the parties' request to file limited summary judgment motions *because the parties represented that their motion would significantly narrow and streamline the issues to be tried*, which was a gross overstatement as evidenced by the three lengthy opinions the court has had to write. In retrospect, the court should have never granted the parties leave, as it only opened a legal and procedural Pandora's box. In their Limited Motion for Summary Judgment (Doc. 39), Defendants contended that the two claims asserted by Plaintiff in this action based on denial of equal protection and First Amendment free speech/ retaliation were barred by res judicata. Plaintiff contended in his partial summary judgment (Doc. 42) that he was entitled to judgment on his equal protection claim against Dallas County because his right to petition the government for redress of grievances is a fundamental right, and Dallas County's ordinance that limits grievance rights to deputy constables hired after August 19, 2013, denied him his right to equal protection of the laws under the United States Constitution and also violated his First Amendment right to petition the

government.  In support of his equal protection claim, Plaintiff contended that his claim against the County was based on the County's and Evans's conduct in terminating his employment and denying or refusing to hear his petition appealing the termination of his employment.  *See* Pl.'s Summ. J. Br. ¶¶ 2, 21, 25 (Doc. 43).

In response to Plaintiff's summary judgment motion, Defendants asserted that Plaintiff's equal protection claim, whether based on the alleged right to petition the government or the allegedly discriminatory treatment of deputy constables, applied only to the County, not Evans, because the rule that precluded Harmon from appealing the termination of his employment was put in place by the County without input from Evans, and the denial of civil service protection to Harmon occurred because of the County rule and for no other reason. In addition to contending that Plaintiff's two claims were barred by res judicata, Defendants requested that the court treat their response to Plaintiff's summary judgment motion as a cross-motion for summary judgment in the County's favor on the equal protection claim, which the County contended could be decided as a matter of law. *In his reply brief, Harmon never challenged Defendants' contention that he had only asserted two claims, one for denial of equal protection against the County based on his alleged right to petition or appeal the termination of his employment and one for retaliation in violation of his First Amendment right to free speech against both Defendants; nor did Harmon challenge Defendants' assertion that his equal protection claim was only against the County.*

**F.     Decision to Revisit the Denial of Evans's Motion for Judgment and Submission of Supplement Briefs**

On January 16, 2017, before ruling on the parties' motions for partial summary judgment, the court gave the parties notice of its decision to *sua sponte* revisit Judge Solis's ruling on Evans's Motion for Judgment as follows:

> In reviewing the parties' motions, the court also necessarily reviewed the record in this case, including . . . Judge Jorge A. Solis's . . . December 1, 2015 order denying . . . Evans's Motion for Judgment . . . , the parties' briefs as to this motion, and Plaintiff's pleadings. In his order, it appears that Judge Solis addressed in a general and conclusory manner the issue of whether the challenged conduct by . . . Evans . . .—terminating . . . Harmon . . . in retaliation for his reporting conduct by Evans and others that Harmon believed to be illegal—violated clearly established federal statutory or constitutional rights.
>
> In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts . . . to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). According to *Mullenix*, courts must consider "whether the violative nature of particular conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).
>
> Because the order on Evans's Motion for Judgment did not consider whether the nature of the challenged conduct was clearly established in the specific context of this case, the court *sua sponte* **revisits** this issue, and **directs** the parties to file by **February 2, 2017**, supplemental briefs on the issue. The parties' briefs must not exceed **seven (7) pages**, exclusive of signature pages, and shall address whether, in light of *Mullenix*, *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and related Supreme Court and Fifth Circuit authority, the challenged conduct by Evans and corresponding alleged violation of Harmon's right to First Amendment free speech was clearly established at the time his employment was terminated. No further filings will be allowed regarding this issue unless directed by the court. To avoid further delay, no extensions of time will be granted.

Order 1-2 (Doc. 52). On February 2, 2017, the parties submitted briefing regarding the specific issue raised by the court as to whether the nature of the challenged conduct, with respect to Plaintiff's Free Speech Claim under the First Amendment, was clearly established in the specific context of this

case. In addressing the issue raised by the court, Plaintiff advised in his supplemental brief that, in addition to his two claims for denial of equal protection and retaliation in violation of the First Amendment's Speech Clause, he also has a claim against Evans for violation of the First Amendment's Petition Clause that has not yet been challenged by Evans. According to Plaintiff, his First Amendment Petition Claim is based on his allegation that Evans refused to hear his grievance:

> Harmon alleges Defendant Evans illegally refused to hear Harmon's grievance over his termination, although Dallas County has claimed that all employees of Dallas County have the right to appeal terminations to their department head. While Harmon claims Dallas County's policy denying grievance rights to him and other deputy constables is a denial of equal protection, Harmon separately challenges Evans' refusal to hear his grievance as a violation of his FIRST AMENDMENT petition right that was clearly established in 1984. Evans has not sought a judgment on the FIRST AMENDMENT petition claim. Retaliation claims under the Speech Clause and the Petition Clause are analyzed in the same way. Accordingly, Harmon also shows Evans has no qualified immunity as to the petition claim.
>
> Wherefore, Harmon shows Judge Solis correctly rejected the qualified immunity defense.

Pl.'s Supp. Br. on Qualified Immunity 7 (Doc. 54) (internal quotation marks and footnotes omitted).

## G. March 31, 2017 Opinion on Motions for Partial Summary Judgment and Evans's Motion for Judgment

On March 31, 2017, the court concluded that Plaintiff's claims against the County for denial of equal protection and retaliation for the exercise of free speech under the First Amendment are barred by res judicata and dismissed with prejudice these claims. The court further noted that any claim against Evans under section 1983 in his official capacity arising out of the events at issue in this case would in effect have been a claim against the County that was also barred by res judicata. The court further determined that Evans was entitled to judgment as a matter of law, based on qualified immunity, on Plaintiff's First Amendment Free Speech Claim against in his individual

capacity, vacated the portion of Judge Solis's order dealing with his application of the clearly established law standard to this case, and dismissed with prejudice this claim.[1]

Based on its review of Plaintiff's pleadings and the parties' characterization of Plaintiff's claims, the court believed that resolution of the parties' motions on Plaintiff's two claims for denial of equal protection and retaliation in violation of Plaintiff's alleged First Amendment right to free speech disposed of all claims asserted by Plaintiff in this case and expressed surprise as follows regarding Plaintiff's assertion that he had a third "First Amendment Petition Claim" against Evans:

> That Plaintiff has a "First Amendment Petition Claim" is a surprise to the court, as this is the first time that Plaintiff has mentioned anything about this claim. This is likely the reason why Evans did not previously challenge the claim in his Motion for Judgment based on qualified immunity. As noted, Evans expressed the belief in his Motion for Judgment that Plaintiff's section 1983 claim was based only on alleged equal protection and First Amendment free speech violations. Dallas County and Judge Solis were similarly operating under the assumption that these were Plaintiff's only claims. Judge Solis refers in passing in his December 1, 2015 order to Plaintiff's allegation "that Evans was fired and refused an appeal of his termination after a GPS audit showed a discrepancy—even though other employees were not fired for this same discrepancy or were at least given an appeal if they were fired," but it is clear that he was referring to this allegation in the context of Plaintiff's First Amendment free speech claim. Order 7 (Doc. 29).

> Moreover, Judge Solis's order requiring Plaintiff to file a Rule 7(a) Reply was limited to "the issue of Defendants' qualified immunity defenses," Order (Doc. 24), and did not grant Plaintiff leave to assert new causes of action or allegations supporting new causes of action. While Judge Solis impliedly granted Plaintiff's request for leave in his response to Evans's Motion for Judgment (Doc. 27), to supplement his Complaint and Rule 7(a) Reply, Plaintiff said nothing in his motion for leave or the proposed supplement to his Complaint and Rule 7(a) Reply about asserting a new cause of action. Further, as noted in the factual background of this opinion, Plaintiff's allegation that he was deprived of a fundamental right to petition

---

[1] In revisiting Judge Solis's order denying Evans's Motion for Judgment, the court concluded that Plaintiff's motion for leave to supplement his pleadings was impliedly granted by Judge Solis and, therefore, directed the clerk of the court to file the proposed supplement attached as an exhibit to Plaintiff's response to the Motion for Judgment (Doc. 27-1) and give the document a file date of December 1, 2015, the same date as Judge Solis's order.

the government for redress of grievances was previously made in support of his equal
protection claim, not the new "First Amendment Petition Claim" alluded to in his
Supplemental Brief.

Mem. Op. & Order 16-17 (Doc. 55) (quoting J. Solis's Orders (Docs. 24, 29)). The court went on

to note that qualified immunity is "immunity from suit rather than a mere defense to liability," and

qualified immunity questions should, therefore, be determined at the earliest possible stage of

litigation. *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Given the length of time that

the case had been pending, the court expressed "dismay[] with Plaintiff's recent assertion regarding

a 'First Amendment Petition Claim.'" Mem. Op. & Order 17. Instead of dismissing this action, the

court allowed Evans to file a dispositive motion regarding Plaintiff's new First Amendment Petition

Claim. It did so in light of Evans's assertion of qualified immunity, and because it did not believe,

based on the record in this case, that Dallas County or Evans was aware that Plaintiff was asserting

a First Amendment Petition Claim against Evans.

### H.    Evans's Summary Judgment Motion (Qualified Immunity as to Plaintiff's First Amendment Petition Claim)

On April 26, 2017, Evans moved for summary judgment on Plaintiff's First Amendment

Petition Claim. As noted below and discussed more fully herein, Plaintiff contends in response to

Evans's summary judgment motion that, in addition to his First Amendment Petition Claim, he has

other "petition claims" claims remaining against Evans in his individual capacity.  Briefing on this

summary judgment motion by Evans was complete on May 30, 2017.

### I.    Plaintiff's Motion to Recuse

On May 30, 2017, Plaintiff filed his Motion to Recuse, which was denied by the court on

August 8, 2017. In his Motion to Recuse, Plaintiff disagreed with the court's characterization of his

First Amendment Petition Claim and contended that this claim was not new.[2] Plaintiff makes a similar argument in response to Evans's summary judgment motion, contending that the facts alleged in his Complaint and Rule 7(a) Reply regarding his equal protection claim also support a First Amendment Petition Claim, and the same conduct constitutes a denial of equal protection and violation of his First Amendment right to petition the government. In addition to responding to Evans's summary judgment arguments regarding his remaining First Amendment Petition Claim, Plaintiff contends that Evans's refusal to hear his grievance also constitutes a denial of equal protection and "violated [his] statutory grievance rights under TEXAS GOVERNMENT CODE § 617.005 and DALLAS COUNTY CODE Ch. 86." Pl.'s Summ. J. Resp. 17-18. In light of these arguments by Plaintiff, the court noted in its opinion on Plaintiff's Motion to Recuse that it appeared Plaintiff might now be contending that he has additional individual capacity petition claims remaining against Evans, aside from his First Amendment Petition Claim, that are not barred by qualified immunity. The court indicated in its opinion on the Motion to Recuse that it would address this issue and the parties' arguments made with respect to Evans's pending summary judgment on Plaintiff's First Amendment Petition Claim by separate order.

## II.    Evans's Summary Judgment Motion (Doc. 57)

### A.    Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

---

[2] Plaintiff's Motion for Recusal was based in part on the court's statements regarding Plaintiff's assertion of a First Amendment Petition Claim; the court's decision to allow Evans to file a dispositive motion regarding this claim; and the court's decision to *sua sponte* revisit and vacate in part Judge Solis's order denying Evans's Motion for Judgment, based on qualified immunity, to dismiss Plaintiff's First Amendment free speech and retaliation claim.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and

unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19

F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record

and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136

F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of

evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also*

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over

facts that might affect the outcome of the suit under the governing laws will properly preclude the

entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant

and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.*

If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must

be granted. *Celotex*, 477 U.S. at 322-23.

### B. Qualified Immunity Standard

Evans contends that he is entitled to qualified immunity for Harmon's First Amendment

Petition Claim against him in his individual capacity based on Harmon's alleged right to petition the

government. Government officials who perform discretionary functions are entitled to the defense

of qualified immunity, which shields them from suit as well as liability for civil damages, if their

conduct does not violate "clearly established statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official

must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640

(1980). Evans asserted this defense in his Answer.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. If the record sets forth or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id.* The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted)); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v.*

*Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays County*, 154 F.3d at 525. Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 536 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts … to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).

### C.    Analysis

#### 1.    First Amendment Petition Claim

As noted, shortly before this case was set for trial, the court granted the parties' request to file limited motions for summary judgment that, according to the parties, would narrow the issues to be tried.   In reviewing the parties' summary judgment motions and the record in this case, the court also decided to revisit Judge Solis's denial of Evans's Motion for Judgment on Plaintiff's First Amendment Free Speech Claim and ordered supplemental briefing by the parties.   In his supplemental brief, Harmon contended that, even if the court determined that Evans was entitled to qualified immunity on his First Amendment free speech/retaliation claim, he still had a "petition claim" for violation of his "First Amendment petition right" that remained against Evans and had not been challenged by him. Pl.'s Supp. Br. ¶ 12 (footnotes omitted).   To demonstrate in his Supplemental Brief on Qualified Immunity that he had pleaded a "petition claim" against Evans in his individual capacity for violation of his "First Amendment petition right," Plaintiff cited paragraph 38 of his Rule 7(a) Reply, which states: "Defendant Evans illegally refused to hear Harmon's grievance over his termination, although Dallas County has claimed that all employees of Dallas County have the right to appeal terminations to their department head."  Pl.'s Rule 7(a) Reply ¶ 38.

Evans was permitted to and did move for summary judgment on what Plaintiff referred to in his Supplemental Brief on Qualified Immunity (Doc. 54) as his First Amendment Petition Claim under section 1983. Because the court expressed surprise to learn that Plaintiff had a claim, other than the claims pleaded in his Complaint for retaliation in violation of the First Amendment Free Speech Clause and denial of equal protection based on Plaintiff's alleged right to petition or appeal the termination of his employment, the parties dedicated a fair amount of argument in their summary

judgment briefs on Plaintiff's First Amendment Petition Claim to the issue of whether Plaintiff had actually pleaded a claim against Evans personally for violating of his "First Amendment petition right." *Id.*

Evans contends that Plaintiff's pleadings contain no such claim and do not satisfy the heightened pleading standard for qualified immunity set forth in *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc). Evans contends that, even assuming the claim is properly pleaded, it fails as a matter of law because: (1) he committed no violation of Harmon's right to petition under the First Amendment and there was no clearly established law at the time that declared his conduct unconstitutional; (2) Harmon has no fundamental right to complain about the termination of his public employment; and (3) Harmon's grievance regarding his employment termination was a matter of personal concern, not public concern.

Although Plaintiff previously contended in his Supplemental Brief only that he had a "petition claim" under the First Amendment remaining against Evans, he now contends in response to Evans's summary judgment motion on his First Amendment Petition Claim that he has multiple "petition claims" remaining against Evans based on various legal theories. Specifically, Plaintiff contends that he has "petition claims" against Evans for alleged First Amendment, equal protection, and state and local violations. Pl.'s Summ. J. Resp. Br. ¶ 3 (Doc. 62). Plaintiff contends, with respect to *all* of his "petition claims," whether based on alleged First Amendment, equal protection, or state and local violations, that "Evans has not established as a matter of law that he is entitled to qualified immunity on [his] petition claims." *Id.* Plaintiff also takes umbrage with the court's surprised reaction to his assertion of a new First Amendment Petition Claim four years into the

litigation and maintains that he has asserted, since the inception of this lawsuit, what he now refers to generically as "petition claims" based on "grievance rights":

> Contrary to the Court's advocacy regarding an alleged surprise, and notwithstanding Defendant Evans' effort to jump on the "surprise" bandwagon, Norvis Harmon complained that both Defendants denied his grievance rights from the start of the lawsuit in Plaintiff's Original Complaint [Doc. 1], not only in Harmon's Rule 7(a) Reply as the Court erroneously concluded.

*Id.* ¶¶ 9, 16.

Harmon contends that he has "petition claims" against Evans because he alleges in his Complaint in support of his Denial of Equal Protection Claim that: (1) he was denied equal protection when he sought to appeal the termination of his employment by Defendants "through the Dallas County grievance system and ***by appealing to Defendant Evans his department head, but his requests to appeal were refused by Defendants***"; (2) "the right to petition the government for redress of grievances is a fundamental right"; and "the right to petition the government for redress of grievances should be subjected to strict scrutiny." *Id.* ¶ 10 (quoting Pl.'s Compl. ¶¶ 23, 27, 28) (footnotes omitted) (emphasis added in Pl.'s Summ. J. Resp. Br.). Plaintiff contends that he gave further notice of his "petition claims" against Evans in his Rule 7(a) Reply by alleging that: (1) ***"Defendant Evans illegally refused to hear Harmon's grievance*** over his termination, although Dallas County has claimed that all employees of Dallas County have the right to appeal terminations to their department head"; (2) "Defendant Evans was Norvis Harmon's department head at the time of Harmon's wrongful termination"; (3) ***Defendant Evans had a policy and/or a regular practice to not hear grievances of employees***, including grievances by deputy constables"; and (4) "As an elected Constable, ***Defendant Evans was a final policy-maker regarding the grievance policy***

***and/or practice of his office.***" Pl.'s Summ. J. Resp. Br. ¶ 12 (Doc. 62) (quoting Pl.'s Rule 7(a) Reply ¶¶ 37-41) (footnotes omitted) (emphasis added in Pl.'s Summ. J. Resp. Br.).

Plaintiff also points out that he alleged in his Rule 7(a) Reply that: "The right to petition the government for the redress of grievances is established by the First Amendment to the U.S. Constitution and it is a fundamental right." Pl.'s Summ. J. Resp. Br. ¶ 13 (quoting Pl.'s Rule 7(a) Reply ¶ 45). Based on the equal protection petition and grievance allegations in his Complaint and the allegations in his Rule 7(a) Reply regarding the right to petition being a fundamental right under the First Amendment, Plaintiff contends that his petition claim or what he now refers to as his "petition claims" are not limited to the Denial of Equal Protection claim alleged in his Complaint against Dallas County but also encompass additional legal theories of recovery against Evans for equal protection violations; violations of the First Amendment Petition Clause; and violations of Texas Government Code § 617.005 and Dallas County Code Chapter 86.

Regarding the merits of his First Amendment Petition Claim, Plaintiff responds that the right to petition the government for redress of grievances is a well-established fundamental right that is guaranteed by the First Amendment to the United States Constitution, as well as Texas Government Code § 617.005, which, according to Harmon, "protects the right of public employees to present grievances."[3] Harmon contends that Evans's refusal to hear his grievance regarding the termination of his employment violated his First Amendment right to petition because, once Dallas County voluntarily established a grievance process under Dallas County Code Chapter 86 for constables like him, who were hired after August 19, 2003, to present employment grievances, including those

---

[3] The court addresses in a separate section below Harmon's contention that he has a petition claim based on alleged equal protection violations and violations of Texas Government Code § 617.005 and Dallas County Code Chapter 86.

regarding termination, to their chain of command or elected constable for the precinct in which they worked, "Evans was not free to refuse to hear [his] post[-]termination grievance" and could not thereafter institute policies that infringe on his right to petition or discriminate and retaliate against him in administering the County's grievance process without violating the First Amendment.[4] Harmon further asserts that Evans's "policy [of] refusing to hear post[-]termination grievances from deputy constables hired after August 19, 2003," which denied him and other deputy constables their First Amendment right to petition, Pl.'s Summ. J. Resp. Br. ¶ 32 (Doc. 62), should be reviewed under a strict scrutiny standard, and, when reviewed under that standard, the policy fails because it is not narrowly tailored to achieve a compelling state interest. *Id.* ¶¶ 29-31. In support of his summary judgment response, Plaintiff relies on the evidence (Doc. 44) he previously submitted in support of his Motion for Partial Summary Judgment on his equal protection claim against the County, as well as the evidence (Doc. 47) he submitted in response to Defendants' Limited Motion for Summary Judgment. He also relies on his related prior statements of undisputed facts (Docs. 43, 47-1).

Evans replies that "Plaintiff misstates the applicable law regarding the burden of proof on the qualified immunity issue, for it is [he], not the Constable, who has the burden to prove that the latter is **not** entitled to qualified immunity." Evans's Summ. J. Reply 4 (Doc. 64). Evans contends that Plaintiff has not met his burden in this regard. Evans also continues to maintain that Plaintiff's pleadings cannot be construed as including a claim based on the First Amendment's Petition Clause,

---

[4] Pl.'s Summ. J. Br. ¶ 26 (citing and quoting *Professional Ass'n of College Educators ("P.A.C.E."), TSTA/NEA v. El Paso Cty. Cmty. Coll. Dist.*, 730 F.2d 258, 263 (5th Cir. 1984); *and Alabama State Fed'n of Teachers v. James*, 656 F.2d 193, 197 (5th Cir. 1981), for the propositions that: (1) public employees have a right to petition government employers; and the voluntary establishment of a grievance procedure by a public employer and subsequent discrimination or retaliation against employees in administering the grievance process violates the First Amendment.

and Plaintiff's allegations that he was not allowed to grieve his termination are not sufficiently specific and detailed to support such a claim. In addition, Evans reasserts that the First Amendment's Petition Clause does not grant employees like Plaintiff an absolute constitutional right to grieve the termination of their employment. To the extent Plaintiff urges arguments and authority in support of his First Amendment Petition Claim that were made in connection with the parties' prior motions for partial summary judgment regarding Harmon's Denial of Equal Protection claim based on Defendants' refusal to hear the appeal of his termination, Evans relies on the briefs previously submitted by Defendants.

       a.       **Whether Plaintiff Has Pleaded a First Amendment Petition Claim**

"A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" *De Franceschi v. BA C Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)). For a number of reasons, the court determines that Plaintiff has not pleaded a First Amendment Petition Claim, as the factual allegations in his Complaint against the County and Evans are not sufficient to put Evans on notice that Plaintiff intended to assert a separate retaliation claim against him in his individual capacity under the First Amendment's Petition Clause. The claims in Plaintiff's Complaint are expressly limited to those for "Denial of Equal Protection" and "Free Speech Claim." Pl.'s Compl. 4, 5. Moreover, Plaintiff distinguishes between these claims by alleging that his equal protection claim is based on Defendants' refusal or denial of his grievances appealing the termination of his employment and alleging that his free speech claim is based on Defendants' retaliation in terminating his employment in violation of the First Amendment for speaking out about Evans's misconduct:

20.     Plaintiff alleges Defendants' refusal to allow him the opportunity to present his grievances is a denial of equal protection of law and a violation of 42 U.S.C. § 1983.

21.     Plaintiff alleges Defendants' termination of his employment for speaking out about Evans' and others' illegal conduct is a violation of his first amendment rights to free speech and a violation of 42 U.S.C. § 1983.

*Id.* ¶¶ 20-21. Plaintiff similarly delineates in his Rule 7(a) Reply between his equal protection petition claim and his First Amendment retaliation/free speech claim. *See* Pl.'s Rule 7(a) Reply ¶¶ 30-33, 50 (Doc. 25) (allegations regarding First Amendment retaliation/free speech claim); 34-49 (allegations regarding equal protection petition claim). Likewise, in response to Defendants' Limited Summary Judgment Motion, after this action had been pending three years, Plaintiff asserted only that he had two claims in this action for "denial of equal protection and retaliatory discharge . . . for exercising his free speech rights." Pl.'s Resp. to Defs.' Summ. J. Mot. ¶¶ 3, 78 (Doc. 47-1). *It was only after the court announced its decision to revisit Judge Solis's ruling on Evans's Motion for Judgment as to Plaintiff's Free Speech claim and ordered supplemental briefing on the motion that Plaintiff contended for the first time in February 2017 that he still had a First Amendment Petition Claim against Evans, even if his Free Speech Claim was dismissed.*

Plaintiff correctly noted in his Supplemental Brief (Doc. 54) that the framework used to govern retaliation claims by public employees under the First Amendment Speech Clause and Petition Clause is the same. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 398 (2011). Retaliation claims based on First Amendment speech and petition rights, however, are not synonymous, as the former is based on retaliation for speaking out on matters of public concern, whereas the latter is based on retaliation for petitioning on matters of public concern. Specifically, to plead a retaliation cause of action under Section 1983 for violations of the First Amendment

Speech or Petition Clauses, a public employee must allege, or set forth allegations from which the court may reasonably infer, that: "(1) he suffered an adverse employment action, (2) his speech [or petition] involved a matter of public concern, (3) his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency . . . , and (4) his speech [or petition] was a substantial or motivating factor behind the defendant's actions." *James v. Tex. Collin Cty.*, 535 F.3d 365, 375-76 (5th Cir. 2008) (citations omitted). First Amendment claims, whether based on the Speech Clause or Petition Clause, also differ from equal protections claims, which must be supported by allegations that "two or more classifications of similarly situated persons were treated differently." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) (per curiam) (citation omitted). If this element is alleged, the court determines whether the claim should be reviewed under a strict scrutiny or rational basis standard. *Id.* (citation omitted). Strict scrutiny applies only when "a government classification implicates a suspect class or a fundamental right." *Id.* (citation omitted). 217. "Otherwise, rational-basis review applies and th[e] court need only determine whether the classification is rationally related to a legitimate government interest." *Id.*

Here, Harmon alleges in his Complaint in support of his Free Speech Claim that Defendants terminated his employment for speaking out about Evans's illegal conduct. Harmon similarly alleges in his Rule 7(a) Reply that Evans wrongfully terminated his employment in retaliation for exercising his First Amendment right to speak out about Evans's illegal conduct, which, according to Harmon, involved a matter of public concern. Harmon, however, does not allege anywhere in his Complaint or Rule 7(a) Reply that he was retaliated against by Evans in violation of the First Amendment and suffered an adverse employment action as a result of his petitioning or appealing the termination of

his employment; nor does he allege any facts from which the court could reasonably infer that the appeal of his employment termination involved a matter of public concern.

Moreover, while Harmon alleges in his Complaint and Rule 7(a) Reply that "the right to petition the government for redress of grievances is a fundamental right," this allegation is clearly made in connection with his claim for Denial of Equal Protection, as he contends that "the actions of Defendants to deprive Plaintiff of the right to petition the government for redress of grievances, when such right is granted to other similarly situated employees, is a denial of the Plaintiff's right to equal protection of law guaranteed by the U.S. Constitution . . . that should be subjected to strict scrutiny." Pl.'s Compl. ¶¶ 26-28. Though Harmon alleges for the first time in his Rule 7(a) Reply that "[t]he right to petition the government for the redress of grievances *is established by the First Amendment* to the U.S. Constitution and it is a fundamental right," Pl.'s Rule 7(a) Reply ¶ 45 (Doc. 25) (emphasis added), this allegation similarly pertains to his "denial of equal protection" claim, *see id.* ¶ 46, which he distinguishes from his First Amendment claim against Evans for retaliation in violation of his "First Amendment right to speak out on a matter of public concern." *Id.* ¶ 50. Regardless, the reference in Harmon's Rule 7(a) Reply regarding the right to petition being a fundamental right under the First Amendment is insufficient to state a retaliation claim under the First Amendment's Petition Clause, even if considered in conjunction with the petition allegations in Plaintiff's Complaint.

Further, even if Harmon intended to assert a Petition Clause claim by alleging in his Rule 7(a) reply that the right to petition is established by the First Amendment, a "Rule 7(a) reply is not a proper vehicle for [a] plaintiff[] to raise a new cause of action that [he has] not been granted leave to add through an amended complaint." *Ellis v. Crawford*, No. 3:03-CV-2416-D, 2007 WL 1624773,

at *11 (N.D. Tex. June 6, 2007). This is so because the purpose of the heightened pleading standard established by the Fifth Circuit in *Schultea* that governs Rule 7(a) replies is to require a plaintiff to support the claims he has already asserted with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant[s'] conduct at the time of the alleged acts'" in response to a defendant's claim of qualified immunity. *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (quoting *Schultea*, 47 F.3d at 1434. Harmon's contention in response to Evans's Rule 12(c) Motion for Judgment that he should be granted leave to amend his pleadings after expiration of the pleading deadline, two years after the lawsuit was filed, because Defendants had not previously pointed out the deficiencies in his pleadings via a Rule 12(b)(6) motion to dismiss or motion for more definite statement turns the heightened pleading standard and burden for qualified immunity on its head.

In any event, Judge Solis's order requiring Plaintiff to file a Rule 7(a) Reply was limited to "the issue of Defendants' qualified immunity defenses" and did not grant him leave to assert new causes of action or allegations supporting new causes of action. Order (Doc. 24). While Judge Solis impliedly granted Plaintiff's request for leave, included in his response to Evans's Motion for Judgment (Doc. 27), to supplement his Complaint and Rule 7(a) Reply, Plaintiff said nothing about asserting a new cause of action for retaliation under the First Amendment Petition Clause; rather his motion for leave and proposed supplement to his Complaint and Rule 7(a) Reply sought only to supplement his pleadings to correct deficiencies in his First Amendment retaliation/speech claim. *See* Pl.'s Resp. to Evans's Mot. for J. (Doc. 27) ¶¶ 5, 16-19; *see also generally* Pl.'s Supp. to Orig. Compl. & Rule 7(a) Reply (Doc. 27-1). Thus, Harmon cannot use his Rule 7(a) Reply to add a new claim that was not included in his Complaint, and the court does not construe his Rule 7(a) Reply

as amending his pleadings to add a new cause of action for retaliation in violation of the Fist Amendment Petition Clause.

Similarly, the court does not construe Harmon's July 2016 summary judgment arguments as raising a new retaliation claim under the First Amendment's Petition Clause, even though he contended for the first time that Dallas County's order limiting access to the County's grievance system to constables hired before August 19, 2003, constituted a violation of his First Amendment right to petition the government for grievances, as well as a denial of equal protection.  Pl.'s Summ. J. Br. ¶¶ 37-39.  It is well-established that a claim raised for the first time in the context of a summary judgment motion is "not properly before the court."  *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (quoting *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).  Accordingly, any summary judgment arguments by Plaintiff regarding First Amendment violations  that were made in support of his equal protection claim against Dallas County could not have given rise to a new retaliation claim under the First Amendment Petition Clause.

Plaintiff appears to contend that he should be entitled to recover on any theory of recovery that fits the factual allegations in his pleadings, even if the theory of recover or cause of action itself is not pleaded.  At the motion to dismiss stage, "the fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper theory" or amendment of pleadings.  *Doss v. South Cent. Bell Tel. Co.*, 834 F.2d 421 (5th Cir. 1987).  This case, however, was set for trial and was far beyond the motion to dismiss stage when Plaintiff first asserted that he had a retaliation claim under the First Amendment's Petition Clause.  The same is true of Plaintiff's most recent assertion that he has additional "petition claims" remaining against Evans, which was not made until

after the court dismissed his First Amendment Free Speech Claim against Evans and all claims against Dallas County and Evans in his official capacity, and after Evans moved for summary judgment on his First Amendment Petition Claim.

In upholding the denial of a plaintiff's request in *Southern Constructors* to add a new theory of recovery after an adverse ruling, the Fifth Circuit rejected the argument that a party, even in the late stages of litigation, should be "entitled to recovery under any legal theory that would fit allegations of fact contained in the operative pleadings," and explained that proceeding in the proposed "blind-hog-occasionally-finds-an-acorn approach would play havoc with trial procedure and would negate the . . . winnowing process that occurs under the present federal rules" for narrowing the facts and relevant legal issues for trial. *Southern Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 610 (5th Cir. 1993) (footnote omitted). The Fifth Circuit has also admonished litigants for engaging in the type of "wait and see" approach in which Plaintiff has engaged in this case, particularly when a litigant is represented by counsel and fails to assert a claim as soon as he could have. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 n.6 (5th Cir. 2003) (citation omitted). The Fifth Circuit has also made clear that a "busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*." *Rosenzweig v. Azurix Corp*., 332 F.3d 854, 864-65 (5th Cir. 2003) (citation omitted); *Southern Constructors Grp. Inc.*, 2 F.3d at 612 (noting that the Fifth Circuit has affirmed denials of requests for leave to amend when the movant "attempted to present theories of recovery seriatim to the district court") (citation omitted).

Plaintiff has engaged in a "wait and see" approach and pattern of presenting theories of recovery *seriatim* throughout this case by only seeking to amend his pleadings, attempting to revive previously abandoned claims, and asserting new claims whenever he is faced with dismissal of a

claim, and even filing a motion to recuse the undersigned. It was only after Evans filed his Motion for Judgment on Plaintiff's Free Speech Claim, and after Plaintiff filed his Rule 7(a) Reply, that Plaintiff asked in response to the Motion for Judgment to supplement his pleadings and Rule 7(a) Reply as to his Free Speech Claim. During the parties' first round of summary judgments on his equal protection claim, he contended for the first time that Defendants had violated the First Amendment Petition Clause and attempted to blur the distinction between his equal protection petition claim and the newly asserted but unpleaded First Amendment Petition Claim by contending that Defendants' denial of or refusal to hear his petition appealing the termination of his employment was a violation of *both* his right to equal protection *and* the First Amendment's Petition Clause. Next, after the court announced its decision to revisit Judge Solis's ruling on Evans's Motion for Judgment as to Plaintiff's Free Speech Claim and ordered supplemental briefing on the motion, Plaintiff contended that, even if his Free Speech Claim was dismissed, he still had a First Amendment Petition Claim against Evans. Finally, after Evans was allowed to move for summary judgment on Plaintiff's new First Amendment Petition Claim, Plaintiff contended in response to Evans's motion on the First Amendment Petition Claim that he has additional "petition claims" remaining against Evans based on equal protection violations and violations of state and local law, even though he only previously contended that he had a First Amendment Petition Claim remaining against Evans in his individual capacity.

Moreover, Harmon alleged only that he was seeking relief against Evans in his individual capacity with respect to First Amendment Free Speech Claim, Pl.'s Rule 7(a) Reply ¶ 50, and when Evans moved for judgment on April 17, 2015, on "all the claims against him in his individual capacity" based on his qualified immunity, Harmon did not clarify that he had pleaded or intended

to pursue claims against Evans in his individual capacity, other than his Free Speech Claim.[5]

Evans's Mot. for J. 9 (Doc. 26). Likewise, Plaintiff did not clarify that he had a First Amendment

Petition Claim against Evans, either in his official or individual capacity, in response to the following

assertion in Evans's Motion for Judgment regarding Plaintiff's claims:

> Plaintiff filed an original complaint against Dallas County and the Constable on June 3, 2013. (Doc. 1). In that complaint, Plaintiff asserted two claims: (1) "free speech" and (2) denial of equal protection. The "free speech" claim is that Plaintiff's employment with the County as a Deputy Constable was terminated in retaliation for speaking out on a matter of public concern. (Doc. 1, p. 5).

*Id.* at 1. Later, when the County and Evans subsequently filed a joint motion for partial summary

judgment and summarized "Plaintiff's Claims" as including only those for "*1. Denial of Equal

Protection*" and *"2. Retaliation for Exercise of Free Speech Rights*," Plaintiff said nothing about

having a separate petition claim against Evans based on First Amendment violations or any other

theory. Defs.' Summ. J. Br. 2-3 (Doc. 40). Similarly, when Defendants asserted, in response to

Plaintiff's Motion for Partial Summary Judgment and their cross-motion for summary judgment on

Plaintiff's Denial of Equal Protection claim, that Harmon had two claims—one for denial of equal

protection and one for retaliation for exercise of free speech rights—Harmon did not dispute this

characterization of his claims. Defs.' Resp. to Pl.'s Summ. J. Mot. 1 (Doc. 46) ("Harmon's two

claims: denial of equal protection and retaliation for exercise of free speech rights."). Additionally,

Plaintiff did not clarify that he had a petition claim, based on either the denial of equal protection,

First Amendment violations, or any other theory, against Evans in his official or individual capacity

when Defendants twice contended during the first round of summary judgments that his Denial of

---

[5] *See Matherne v. Wilson*, 851 F.2d 752, 759 (5th Cir.1988) ("[T]he protection of qualified immunity [under section 1983] extends to an individual only in his individual capacity.") (citing *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985)).

Equal Protection claim is "applicable only against the County, which created the rule, and is not applicable to the Constable, who had no involvement with the enactment of this rule or its application to Harmon." *Id.* at 4 (Doc. 46); Defs.' Summ. J. Br. 2 (Doc. 40). Based on the course of proceedings in this case, the court concludes that Harmon has not pleaded any claims against Evans in his individual capacity other than his Free Speech Claim that the court has already dismissed.[6] Alternatively, even if pleaded, the claims were abandoned when Harmon failed to respond to the contentions and characterizations of Plaintiff's claims in Defendants' Motion for Judgment and prior summary judgment briefs.[7]

### b. Whether Plaintiff's First Amendment Petition Claim Involves a Matter of Public Concern

Even assuming that Plaintiff's First Amendment Petition Claim was properly pleaded and before the court, it fails on the merits. Plaintiff did not respond to Evans's contention that his appeal of his employment termination was personal in nature and thus insufficient to support a First

---

[6] When a plaintiff does not specify whether an official is sued in his official or individual capacity, courts look to the "course of the proceedings" in a case to determine "the nature of liability sought to be imposed." *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 402-03 (5th Cir. 2004) (quoting *Kentucky*, 473 U.S. at 167 n.14). Factors relevant to the inquiry include the substance of the complaint, the nature of relief sought, and statements in dispositive motions and responses. *See United States ex rel. Adrian*, 363 F.3d at 402-03 ("The California Defendants clearly stated, in both the initial and the reply memoranda supporting their motion to dismiss, that the Livermore employees should be dismissed because they were only named in their official capacity. Adrian never challenged this assertion, arguing only that these employees were subject to liability because the Regents and Livermore were subject to liability. In its analysis of this motion to dismiss, the California court did not distinguish between the Livermore employees and Livermore. Thus, the course of proceedings in this case clearly indicates that in the first amended complaint the Livermore employees were only named in their official and not in their personal capacities. The California court correctly dismissed the Livermore employees because the FCA does not provide a cause of action against state agency employees in their official capacity.") (footnote omitted).

[7] The Fifth Circuit has held that, when a plaintiff fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned. *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to motion to dismiss); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (explaining that a party "in his opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue.").

Amendment petition claim.[8] The First Amendment right to petition against the government as employer is limited to matters of public concern. *Guarnieri*, 564 U.S. at 398-99. "If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." *Id.* at 398. "[W]hether an employee's petition relates to a matter of public concern will depend on "the content, form, and context of [the petition], as revealed by the whole record." *Id.* at 398 (quoting *Connick v. Myers*, 461 U.S. 138, 147-148, and n.7 (1983). The Court in *Guarnieri* further explained as follows:

> The forum in which a petition is lodged will be relevant to the determination of whether the petition relates to a matter of public concern. A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context.
>
> Of course in one sense the public may always be interested in how government officers are performing their duties. But . . . that will not always suffice to show a matter of public concern. A petition that "involves nothing more than a complaint about a change in the employee's own duties" does not relate to a matter of public concern[.] . . . The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts.

---

[8] Plaintiff previously argued, in his reply brief supporting his prior Motion for Partial Summary Judgment on his equal protection claim, that the right to petition under the First Amendment is not limited to matters of public concern. Pl.'s Summ. J. Reply ¶ 18 (Doc. 49). Plaintiff, nevertheless, contended that the appeal of his employment termination involved a public concern because he asserted in the appeal, "I believe I have been retaliated against for making a good faith report of a violation of law to the special prosecutor, Ted Lyons, in violation of the Texas Whistleblower Act." *Id.* ¶ 20 (quoting Pl.'s App. 51). Plaintiff reasoned that his appeal involved matters of public concern because it "addressed his reports of Defendant Evans'[s] illegal conduct, which prompted Harmon's wrongful termination," and "[m]isconduct, illegal conduct and corruption by government officials are very clearly matters of public concern." Pl.'s Summ. J. Reply ¶ 20 (Doc. 49) In responding to Evans's current summary judgment motion on his First Amendment Petition Claim, Plaintiff did not incorporate by reference the arguments he made in support of or in opposition to the parties' prior summary judgment motions. He, instead, only incorporated his statement of undisputed facts and the evidence in his appendices. Accordingly, the court need not and does not address all of the legal arguments previously raised by Plaintiff, except to the extent necessary to resolve Evans's contention that Plaintiff's First Amendment Petition Claim fails because it does not involve a matter of public concern.

*Guarnieri*, 564 U.S. at 398-99.  As a result, "[i]nternal personnel disputes and management decisions are rarely a matter of public concern." *Gibson v. Kilpatrick*, 838 F.3d 476, 485 (5th Cir. 2016) (quoting *Stotter v. University of Tex. at San Antonio*, 508 F.3d 812, 827 (5th Cir. 2007)).  Whether a petition addressed a matter of public concern is a question of law.  *See Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 444 (5th Cir. 1999) (citation omitted).

It is undisputed that Plaintiff's First Amendment Petition claim pertains to Harmon's use of an internal Dallas County grievance procedure to appeal the termination of his employment, a personal concern.[9]  *See* Pl.'s App. 50-53 (Doc. 44).  Although Harmon states that his employment was terminated in retaliation for "a good faith report of a violation of law to the special prosecutor, Ted Lyons, in violation of the Texas Whistle Blower Act," *id.* at 51, the petition appealing his termination involves nothing more than a grievance regarding Harmon's employment status, which does not relate to a public concern.  *See Guarnieri*, 564 U.S. at 399; Pl.'s App. 50-52 (Doc. 44). There is no evidence that Harmon was using the petition appealing his employment termination as a platform to publicly air his concerns about Evans's conduct.  He, instead, was merely using the petition to appeal the termination of his employment any employee, private or public, would do. In other words, the point of Harmon's appeal was not to present concerns about Evans's conduct but to seek reinstatement of his employment as deputy constable with the County.  Moreover, Harmon's allegation in the petition appealing the termination of his employment and this lawsuit that his employment was terminated in violation of the Texas Whistle Blower Act or the First Amendment

_____

[9] Harmon relies on the Dallas County Formal Grievance Form he submitted to appeal the termination of his employment under the County's formal civil service grievance procedure applicable to deputy constables hired before August 19, 2003, to show that he also appealed under the separate County procedure that permits deputy constables with no formal civil service grievance rights to submit grievances to their department head or human resources. *See* Pl.'s App. 50-54 (Doc. 44).

is insufficient to convert what is a matter of private concern regarding Harmon's employment being terminated into a matter of public concern. *See Gibson*, 838 F.3d at 484.

The personal relief sought by Harmon in the petition appealing his termination, as well as the relief sought by him in this lawsuit, lend further support to the court's conclusion that Harmon's appeal of his employment termination involves a personal matter rather than one involving public concern. *Id*. at 485 ("The suit asks only for personal relief. Gibson did not request 'any type of damages implicating the public.' He chose not to seek an injunction to prevent the mayor from engaging in such future behavior."). Specifically, the relief sought by Harmon in his 2011 appeal and this lawsuit merely seek to rectify the harm he allegedly suffered as a result of his being fired. In his appeal grievance form, Harmon requests that "his termination be voided, that all back pay and benefits be restored to [him], and that any and all reference to this disciplinary action and the related investigation be removed from my personnel file." *See* Pl.'s App. 51 (Doc. 44). Similarly, in this lawsuit, Harmon requests only damages he incurred as a result of Defendants' conduct in allegedly terminating his employment unlawfully and denying or refusing to hear the appeal of his termination. Pl.'s Compl. 35 ("Plaintiff's professional career has been irreparably damaged due to Defendants' unlawful conduct and Plaintiff has suffered damages, including: emotional distress and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in the past; and loss of earnings and loss of earning capacity in the future."); Pl.'s Rule 7(a) Reply ("Norvis Harmon has been damaged as a result of his wrongful termination; because of Defendant Evans' refusal to hear any appeal of Harmon's wrongful termination; and as a result of his denial of grievance rights in the Dallas County Civil Service system by Defendant Dallas County.").

Additionally, Harmon contends that his First Amendment Petition Claim is against Evans in his individual capacity, and he seeks to hold Evans personally liable for damages allegedly sustained as a result of his employment being terminated. In *Gibson*, the Fifth Circuit addressed a closely analogous issue of whether a plaintiff's petition involved a matter of public concern and concluded that it did not because the defendant had been sued in his individual capacity:

> Importantly, Gibson's suit was against the mayor only in his personal (or individual) capacity. "Personal-capacity suits seek to impose personal liability"; they cannot establish governmental liability. "[A]n award of damages against an official in his personal capacity can be executed only against the official's personal assets." For purposes of liability, a suit against a governmental official in his individual capacity is the equivalent of suing one's neighbor. Thus, because they do not concern the public [], personal-capacity suits are much less likely to be matters of public concern. Therefore, the form of Gibson's suit—personal capacity—provides significant support for the conclusion that it was not a matter of public concern.

*Gibson*, 838 F.3d at 486 (footnotes and internal citations omitted). For similar reasons, the court concludes that Harmon's petition or grievance appealing the termination of his employment, which is the subject of his lawsuit, is personal in nature, as he seeks to hold Evans personally liable for damages allegedly sustained as a result of his employment being terminated.

Thus, for the foregoing reasons, and after considering "the content, form, and context of [Harmon's petition], as revealed by the whole record," the court determines that Harmon's petition or grievance appealing his employment termination does not pertain to a matter of public concern. Moreover, even if the court were to construe the content of Harmon's appeal of his employment termination as a mix of private and public concerns, it concludes that private concerns predominate when considering the content, form, and context of the appeal. *See id.* at 487. Plaintiff's First Amendment Petition Claim, therefore, fails as a matter of law. As Plaintiff has failed to raise a genuine dispute of material fact regarding a violation of a constitutional or federal statutory right

with respect to his First Amendment Petition Claim, no further inquiry by the court is necessary, and Evans is entitled to judgment as a matter of law on his qualified immunity defense to Plaintiff's Petition Claim to the extent based on alleged retaliation in violation of the First Amendment's Petition Clause. *See Saucier*, 533 U.S. at 201.

### 2. Petition Claim Based on Denial of Equal Protection

As noted, Plaintiff contends in his response to Evans's summary judgment motion regarding Plaintiff's First Amendment Petition Claim that Evans is not entitled to qualified immunity or summary judgment on his Petition Claim to the extent it is based on the alleged denial of equal protection.[10] Plaintiff contends that, while deputy constables hired after August 19, 2003, have no civil service grievance rights, Dallas County previously admitted that deputy constables with no formal civil service grievance rights can still submit their grievances to their department head or human resources. Plaintiff contends that the undisputed evidence shows that Evans refused to hear his posttermination grievance; that Evans had a policy of refusing to hear grievances from terminated deputy constables; and that Evans has failed to present any compelling state interest for his refusal to hear employee grievances.

In his reply brief, Evans accuses Plaintiff of failing once again to confine his arguments to the issue at hand and contends that Plaintiff relies on a "shotgun" approach in responding to his

---

[10] Although Plaintiff's petition claims against Evans based on the denial of equal protection and violations of state and local law were not the subject of Evans's recent summary judgment motion and were instead raised in Plaintiff's summary judgment response, both parties rely on their prior summary judgment briefs and evidence and had an opportunity to present any additional arguments and evidence regarding these claims in conjunction with the summary judgment motion now before the court. As noted, Defendants also previously requested that the court treat their response to Plaintiff's Motion for Partial Summary Judgment on his equal protection claim as a cross-motion for summary judgment. Accordingly, the court need not give Plaintiff or Evans another opportunity to brief the issues or submit evidence before ruling on these claims, which, for the reasons herein explained, fail because they are not before the court, fail as a matter of law, or both.

motion in an effort to distract the court from the issue to be decided. Evans contends that, instead of focusing on his contention that he is entitled to qualified immunity with respect to Plaintiff's First Amendment Petition Claim, Plaintiff's response "re-hashes" or "re-processes" in large part matters briefed in the parties' prior summary judgment motions regarding equal protection, Government Code § 617.003, and Dallas County Code Chapter 86 that were rejected by the court. Evans's Summ. J. Reply 2. Evans asserts, for the reasons set forth in Defendants' prior briefs, that there is no general or fundamental "right to petition."

It appears that Harmon's equal protection Petition Claim is limited to his contention that he was denied the opportunity to participate in Dallas County's informal grievance procedure that allows deputy constables with no formal civil service grievance rights to submit grievances to their department head or human resources. Because of the ever-changing nature of Plaintiff's claims in this case and his pleadings not being a model of pellucid draftsmanship, the court, out of an abundance of caution, determines, for the reasons previously explained in this opinion and the court's March 31, 2017 opinion, that Plaintiff has not asserted an equal protection Petition Claim against Evans in his individual capacity based on the County's formal civil service grievance procedure or, if asserted, the claim was abandoned, and any such claim against Evans in his official capacity is barred by res judicata.

Further, although the court has already determined that Harmon's individual capacity claims against Evans are limited to his Free Speech Claim, it further determines that, even if Harmon can be said to have asserted and not abandoned an equal protection Petition Claim against Evans in his individual capacity based on his contention that he was denied the opportunity to participate in Dallas County's informal grievance procedure, the court concludes that this claim fails as a matter

of law. Instead of coming forward with evidence to establish that "two or more classifications of similarly situated persons were treated differently"[11] by Evans, Harmon acknowledges and has consistently maintained that Evans had a policy or regular practice of refusing to hear grievances from terminated deputy constables,[12] and there is no evidence that Evans treated similarly situated terminated deputy constables hired after August 19, 2003, differently in hearing or deciding their employment termination grievances. Thus, Harmon has not satisfied the first requirement for an equal protection claim, and the court need not address the parties' contentions as to whether the claim should be reviewed under a strict scrutiny or rational basis standard. *Gallegos-Hernandez*, 688 F.3d at 195 (citation omitted). Because Harmon has failed to raise a genuine dispute of material fact regarding a violation of a constitutional or federal statutory right based on the denial of equal protection, no further inquiry by the court is necessary, and Evans is entitled to judgment as a matter of law on his qualified immunity defense to Plaintiff's Petition Claim to the extent based on an alleged denial of equal protection. *See Saucier*, 533 U.S. at 201.

### 3. Petition Claim Based on Texas Government Code § 617.005 and Dallas County Code Chapter 86

As noted, Harmon now contends that Evans's refusal to hear his grievance violated his "statutory grievance rights" under Texas Government Code § 617.005 and Dallas County Code Chapter 86. Pl.'s Summ. J. Resp. 17-18. Harmon, however, has not pleaded any claims in this case

---

[11] *Gallegos-Hernandez*, 688 F.3d at 195 (citation omitted).

[12] *See* Pl.'s Rule 7(a) Reply ¶ 40 (Doc. 25); Pl.'s Summ. J. Resp. Br. ¶¶ 12, 17, 29, 30, 32, 33, 40 & n.43 (Doc. 62).

for violations of Texas Government Code § 617.005 and Dallas County Code Chapter 86.[13] These claims were instead raised for the first time in response to Evans's summary judgment motion on Plaintiff's First Amendment Petition Claim. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera*, 429 F.3d at 113 (citation omitted). For the same reason, Harmon's earlier passing reference to Dallas County Code Chapter 86 in his "partial summary judgment [motion] on his claim that his exclusion from the protections of the Dallas County civil service system is a denial of equal protection under law that violates 42 U.S.C. § 1983" is not a valid basis for him to convert or expand his equal protection claim as originally pleaded into a separate claim against Evans for alleged violations of Dallas County Code Chapter 86. Pl.'s Summ. J. Br. ¶ 1, 26 (Doc. 43) ("Dallas County's civil service ordinance and grievance procedures are found in Article 86 of the Dallas County Code.") (footnote omitted). Additionally, as already explained, any equal protection claim by Plaintiff against Evans in his individual or official capacities based on Defendants' denial of Harmon's appeal through the Dallas County civil service grievance procedures was abandoned by Plaintiff or is barred by res judicata.

Even if the claims had been properly pleaded as an additional legal basis to support a right to petition claim by Plaintiff, they fail as a matter of law because Plaintiff alleges in his pleadings that this action and the claims asserted in this case are all brought pursuant to 28 U.S.C. § 1983; however, "[a] violation of state law is not cognizable under 28 U.S.C. § 1983." *Carr v. Johnson*, 51 F. App'x 928, 2002 WL 31415157, at *1 (5th Cir. 2002) (per curiam) (citing *Leffall v. Dallas*

---

[13] Plaintiff asserted a claim against Dallas County in his state court action for alleged violations of Texas Local Government Code § 617.004, but no such claim was asserted in this action against either Dallas County or Evans.

*Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994)). Because Plaintiff's pleadings as to these claims do not set forth a violation of a constitutional or federal statutory right, no further inquiry by the court is necessary, and Evans is entitled to judgment as a matter of law on his qualified immunity defense to Plaintiff's Petition Claim, to the extent based on alleged violations of Texas Government Code § 617.005 and Dallas County Code Chapter 86. *See Saucier*, 533 U.S. at 201.

Moreover, Plaintiff at no time sought leave to assert state law claims for alleged violations of Texas Government Code § 617.005 and Dallas County Code Chapter 86, and the court would not have granted Plaintiff leave at this stage of the litigation even if leave had been sought. The deadline for amendment of pleadings expired on April 1, 2016, and, by the time the case was reassigned to the undersigned on April 27, 2016, the trial setting put in place by Judge Solis was quickly approaching. Any request by Plaintiff to amend his pleadings at this juncture for adding these or other claims, therefore, would have to be considered under Federal Rule of Civil Procedure 16(b). *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008); *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003) ("Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably [have been] met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (citation omitted). Plaintiff has not presented any reason to show that the scheduling order deadline for pleading amendments could not reasonably have been met despite the exercise of diligence, and the court can reasonably infer that he knew or should have known of the facts relevant to any such amendment long before the deadline for amendment of pleadings expired in April 2016

and before the parties filed their motions and supporting briefs for partial summary judgment in July and August 2016, as Plaintiff asserted a claim for violations of Texas Local Government Code § 617.004 against Dallas County in his state court action, and the factual basis for Plaintiff's claims has not changed.

Further, the court has inherent authority to control its docket to ensure the efficient administration of the cases pending before it and prevent undue delays in the disposition of pending cases. *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993) (concluding that federal courts have inherent authority "to protect the efficient and orderly administration of justice and those necessary to command respect for the court's orders, judgments, procedures, and authority."); *Prudhomme v. Teneco Oil Co.*, 955 F.2d 390, 392 (5th Cir. 1992) ("The district court has broad discretion in the management of its docket and the trial of lawsuits pending before it."). Thus, there are no claims by Plaintiff for state or local violations of law against Evans that are properly before this court, and, even if Plaintiff had sought leave in response to Evans's most recent summary judgment motion to amend his pleading to assert such claims, the request for leave would have been denied because, at some point, the litigation in this case, which has been pending for more than four and one-half years, must come to an end. *See Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257-58 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case."). Moreover, as previously explained, much of the delay has been caused by Plaintiff's "wait and see" approach and practice of presenting theories of recovery *seriatim*. The court also had to address a meritless motion to recuse filed by Plaintiff, which unnecessarily expended scarce judicial resources and delayed the resolution of this litigation.

### III.    Conclusion

For the reasons stated, the court **concludes** that Evans is entitled to qualified immunity with respect to Plaintiff's Petition Claim under 42 U.S.C. § 1983 against him in his individual capacity, whether premised on retaliation in violation of the First Amendment's Petition Clause, denial of equal protection, or violations of state and local law; **grants** Defendant Derick Evans's Motion for Summary Judgment (Doc. 57); and **dismisses with prejudice** Plaintiff's Petition Claim under 42 U.S.C. § 1983 against Evans in his individual capacity.  As no further claims remain, the court will enter judgment in favor of Defendants Dallas County and Evans by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 20th day of February, 2018.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge